IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>    vs.<br><br>$133,848.00 UNITED STATES CURRENCY,<br><br>                Defendant. | Civil No. 8:25CV513<br><br>**COMPLAINT FOR FORFEITURE *IN REM*** |

The United States of America, for its cause of action against the Defendant property, pursuant to Rule G(2) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, states and alleges as follows:

### Nature of the Action

1. This is an action to forfeit property to the United States for violations of 21 U.S.C. § 881.

### The Defendant *in rem*

2. Defendant property is $133,848.00 United States Currency seized by law enforcement from a vehicle operated by Gor Petrosyan during a traffic stop on westbound Interstate 80 near mile marker 382 on February 5, 2025.

3. The United States Marshals Service currently has custody of the Defendant property.

### Jurisdiction and Venue

4. This Court has subject matter jurisdiction for an action commenced by the United States pursuant to 28 U.S.C. § 1345, and for an action for forfeiture pursuant to 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action pursuant to 21 U.S.C. § 881.

5. This Court has *in rem* jurisdiction over the Defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

## Basis for the Forfeiture

7. Defendant property, $133,848.00 United States Currency, is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, 2) proceeds traceable to such an exchange, and/or 3) money, negotiable instruments and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

## Facts

8. On Saturday, February 5th, 2025, Deputy M. Mejstrik ("Dep. Mejstrik"), was on duty as a sworn and certified Law Enforcement Officer for the Seward County Sheriff's Office ("SCSO") located in Seward County Nebraska.

9. Dep. Mejstrik was in full uniform, displaying his badge of authority, and operating a marked patrol vehicle.

10. At approximately 1721 hours Dep. Mejstrik was traveling westbound on Interstate 80 near mile marker 384 and observed a black 2020 Lincoln Navigator ("suspect vehicle") bearing a California license plate 99765U3.

11. Dep. Mejstrik observed the suspect vehicle following a semi-truck in front of the suspect vehicle at an unsafe distance and that the suspect vehicle had heavily tinted front side

windows which Dep. Mejstrik knows to be outside of the legal limits in both Nebraska and California.

12. These offenses are violations of Neb. Rev. Stat. § 60-6,257 ("Windshield and windows; tinting") and Neb. Rev. Stat. § 60-6,140 ("Following vehicles; restrictions").

13. Dep. Mejstrik utilized his mobile stopwatch application and timed the distance at .76 seconds.

14. While no specific distance is referenced in Neb. Rev. Stat. § 60-6,140, the Nebraska drivers manual refers to a 3 second recommended following distance and the standard used by law enforcement is a 2 second recommended following distance.

15. Dep. Mejstrik made contact with the suspect vehicle by conducting a traffic stop near mile marker 382 on Interstate 80.

16. Dep. Mejstrik contacted the driver through the front passenger side window which was rolled down.

17. Upon contact, Dep. Mejstrik informed the driver, of the reason for the traffic stop (heavily tinted windows and following too close).

18. The driver provided Dep. Mejstrik with a California Driver's License that identified himself as Gor Petrosyan (DOB: 09/14/1990) ("Gor").

19. The front seat passenger was identified as Narek Petrosyan (DOB: 08/20/1987) ("Narek").

20. Dep. Mejstrik was able to detect the odor of marijuana coming from the open passenger side window.

21. Dep. Mejstrik requested Gor to exit the vehicle and have a seat in the front passenger seat of the patrol car while being issued a warning.

22. Dep. Mejstrik provided Seward Dispatch with Gor's information and requested that they check license status, warrants, and criminal history.

23. While Dep. Mejstrik was preparing the written warning, Dep. Mejstrik conversed with Gor who stated that he is on his way back to California, from Chicago where he and Narek stayed a couple of days visiting their brother.

24. Throughout the course of the traffic stop, Dep. Mejstrik became suspicious that Gor was involved in major criminal activity for numerous reasons.

25. The following is a list of indicators, that under the totality of the circumstances, led to Dep. Mejstrik's suspicions:

   1. during Dep. Mejstrik's initial approach, he observed several hard-shell suitcases in the rear storage area of the suspect vehicle;

   2. odor of marijuana;

   3. there was an overwhelming odor of cologne and air freshener coming from the suspect vehicle;

   4. Dep. Mejstrik observed license plate reader data that showed the suspect vehicle to make several previous quick turnaround trips to Chicago from southern California;

   5. Dep. Mejstrik noted that the trips were short and found it suspicious as they were similar to the trips of drug traffickers that Dep. Mejstrik has encountered prior cases; and

   6. Dep. Mejstrik noted that Gor was traveling between major source and destination areas for large amounts of contraband.

26. Dep. Mejstrik finished the traffic stop and issued Gor a written warning for "Following Too Close."

27. Dep. Mejstrik then informed Gor that he was able to smell the odor of marijuana coming from the suspect vehicle.

28. Gor stated that his brother, Narek, smokes marijuana but there was no marijuana in the suspect vehicle.

29. Dep. Mejstrik asked Gor if there was anything illegal in the suspect vehicle and Gor advised Dep. Mejstrik that there was not.

30. Dep. Mejstrik asked Gor if there were any large amounts of US currency over $10,000.00 in the suspect vehicle which Gor advised there was not.

31. Dep. Mejstrik requested and was denied consent to search the suspect vehicle.

32. Dep. Mejstrik then informed Gor that Dep. Mejstrik would be conducting a probable cause search of the suspect vehicle based on the odor of marijuana.

33. Dep. Mejstrik conducted a search of the suspect vehicle at that time and located 2 vacuum sealed packages of US currency in a bag behind the front passenger seat.

34. Dep. Mejstrik also located several bundles of currency in the center console suspect vehicle as well.

35. The 5 hard-shell suitcases Dep. Mejstrik had observed earlier were all empty and had a heavy odor of marijuana and air freshener.

36. Gor claimed to have no knowledge or interest in the currency located in the suspect vehicle and allowed Dep. Mejstrik to take a couple photographs of conversations on his phone after signing a form of abandonment for the currency.

37. Narek did state that he had knowledge of the currency but stated that he would also sign a form of abandonment for the currency as well.

38. Narek also allowed Dep. Mejstrik brief access to his cell phone and Dep. Mejstrik photographed a few pictures on Narek's cell phone of what appeared to be 1lb Ziplock bags full of marijuana as well as bulk marijuana being weighed on a scale.

39. Gor and Narek were then released from the scene.

40. The U.S. currency was then transported to the Seward County Task Force Office.

41. At the Seward County Task Force Office, a blind discretionary sniff of the U.S. currency seized from Gor and Narek was conducted by Dep. Mejstrik utilizing Dep. Mejstrik's narcotic detection K9, Storm.

42. The blind discretionary sniff utilized 2 empty clean boxes and 1 box containing the currency.

43. K9 Storm alerted, and indicated, to the presence of a narcotic odor that she's been trained to recognize emanating from the U.S. currency.

44. K9 Storm is a Nebraska certified narcotics detection K9.

45. The amount of money seized was determined to be approximately $133,848.00.

46. On May 24, 2025, the DEA received a timely Claim from Narek.

47. In his claim form, Narek claimed an interest in all of the seized U.S. currency and stated that he was the owner of the U.S. currency.

48. Narek did not provide any information on the source of the funds at the scene of the traffic stop.

49. The $133,848.00 in U.S. currency seized from a suspected drug courier showed no evidence that it was ever engaged in legitimate business.

**Claim for Relief**

WHEREFORE the United States of America prays the Defendant property be proceeded against for forfeiture in accordance with the laws, regulations and rules of this Court; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the Defendant property be condemned, as forfeited, to the United States of America and disposed of according to law and regulations; that the costs of this action be assessed against the Defendant property; and for such other and further relief as this Court may deem just and equitable.

UNITED STATES OF AMERICA,
Plaintiff

LESLEY A. WOODS
United States Attorney

By:   s/ Kimberly C. Bunjer
    KIMBERLY C. BUNJER, #20962
    Assistant U.S. Attorney
    1620 Dodge Street, Suite 1400
    Omaha, NE  68102-1506
    Tel: (402) 661-3700
    Fax: (402) 345-5724
    E-mail:  kim.bunjer@usdoj.gov